# Louisville & Nashville Railroad Co. *v.* Sandlin.

*Action against a Railroad Company to recover Damages for Personal Injuries.*

1. *Action against railroad company for negligence; admissibility of evidence.*—In an action against a railroad company by a passenger to recover damages for personal injuries sustained in a wreck occurring on the defendant's road, where in separate counts of the complaint the defendant was charged with negligence for failure to have the road-bed in proper condition, in failing to have the track in proper condition, and in so constructing the track that the rails spread when the train ran

125 585
133 126

125 585
134 557
134 646

125 585
135 648

125 585
136 490

125 585
139 464

125 585
138 576

125 585
141 194

125 585
144 324

[Louisville & Nashville Railroad Co. v. Sandlin.]

on them, evidence that at the embankment where the wreck complained of ·occurred, water was allowed to stand in the ditch along the side of the road, and in the borrow-pits from which the earth was taken in the construction of the embankment on which the road was built, is relevant and admissible, in connection with other evidence tending to show that the embankment was built of a class of earth through which the water seeped, and that as the result thereof the embankment was rendered wet, which caused the ties to decay.

2. *Same; same.*—In such a case, where the witness had testified to facts tending to show the evil effects of water standing against an embankment, it is competent for him to testify as to what effect the passing of trains would have over that part of the track, he having previously stated that he had worked at that portion of the track and lived near it and had had occasion to notice it; and it is no ·objection to such testimony that the witness was not shown to be an expert.

3. *Evidence; expert testimony.*—A witness who, although he testified that he was not an expert also stated that he had worked on the road for three years doing section work and keeping up the track on the road-bed, and that he had acted as section foreman for a short time and was entrusted with putting braces along the curves of the track, is competent to testify in an action against a railroad company as to how many braces ought to be put on the rails in a curve of given dimensions.

4. *Same; same.*—In an action against a railroad company to recover damages for personal injuries, where, after the physical examination of the plaintiff, some of the physicians testified that there were no external evidence of injury to the plaintiff, but that he complained of being injured in the hip joint, and his testimony showed that such injuries were caused by a wreck on the defendant's road, it is competent for the plaintiff to ask the physician his opinion, as an expert, as to what injuries could be inflicted upon the plaintiff by such an accident as the one complained·of that would not show external evidence of their existence.

5. *Charge as to liability under one of several counts of a complaint.*—Where a complaint contains several counts, charges requested by the defendant which respectively instruct the jury that if they believe the evidence they must find a verdict for the defendant under each of the counts, are properly refused, because they are liable to convey the idea that a separate verdict as to each count must be returned by the jury.

APPEAL from the City Court of Birmingham. Tried before the Hon. W. W. WILKERSON.

This action was brought by the appellee, W. J. Sandlin, against the Louisville & Nashville Railroad Company, to recover damages for personal injuries received by the plaintiff in a wreck of a train on the defendant's road, and upon which he was a passenger. The complaint contained eight counts. The negligence averred is sufficiently stated in the opinion. There is no question raised on the pleadings.

It was shown that the wreck occurred at a curve along the line of the defendant's road, at which point all the cars of the passenger train except the last coach, ran off the track and turned over down an embankment, variously estimated at from eight to fifteen feet in height.

The evidence for the plaintiff tended to show that at the time of the accident, the cross-ties at the curve where the wreck occurred were rotten, and that said curve was rather sharp, and there were no braces placed thereat. And there was also evidence tending to show that the rails at the curve were badly worn.

The evidence for the defendant was in conflict with that of the plaintiff, and tended to show that the cross-ties at the curve were not rotten, but were in good condition, and that the track was properly constructed in every respect. The other facts pertaining to the rulings of the trial court, to which exceptions were reserved, are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the defendant requested the court to give, among others, the following written charges: (1.) "If the jury believe the evidence in this case they must find a verdict for the defendant." (2.) "If the jury believe the evidence they must find a verdict for the defendant under the first count of the complaint." (7.) "If the jury believe the evidence they must find a verdict for the defendant under the sixth count of the complaint." (9.) "If the jury believe the evidence they must find a verdict for the defendant under the eighth count of the complaint."

There were verdict and judgment for the plaintiff. There was a motion for a new trial, which was over-

ruled, and to this ruling the defendant duly excepted. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

THOS. G. & CHAS. P. JONES and ALEX C. BIRCH, for appellant.—The witness McDougall, worked on the railroad at this place about three years before the accident. He was asked "what effect would the passing of trains over that curve have, when you were working there and noticed it?" and witness answered: "It kept the roadbed out of line, low joints there," etc. It was clearly error to refuse to exclude this answer, for the effect of passing trains on this curve at this place three years before, was too remote in point of time.—*Brady v. Metropolitan R. R. Co.*, 127 N. Y. 51; *L. & N. R. R. v. Miller,* 109 Ala. 501.

Of course illegal testimony in the affidavits submitted on the motion for a new trial, could not be considered precisely as though such evidence was offered to the jury, but when specific objection is made to particular parts of the affidavits offered in opposition to the motion for a new trial, and the court overrules the objection, thereby showing that it considered the matter objected to as material and relevant, the court's action must be reversed, for this court can not know that the illegal evidence did not prejudice the parties asking a new trial. *First Nat. Bank of Talladega v. Chaffin,* 118 Ala. 259.

LANE & WHITE, *contra.*—The court did not err in its rulings upon the evidence.—*L. & N. R. R. Co. v. Jones,* 83 Ala. 376; *L. & N. R. R. Co. v. Miller,* 109 Ala. 506; *Bir. Un. R. Co. v. Alexander,* 93 Ala. 133.

The plaintiff was entitled to a recovery.—*L. & N. R. R. Co. v. Jones,* 83 Ala. 376.

HARALSON, J.—1. There were eight counts in the complaint averring negligence: The 1st, in the management of the train by defendant's employes; the 2d, for failure to have the road-bed in proper condition; the 3d, in failing to have the track in proper condition; the. 4th, for having rotten or unsound cross-ties under the

rails; the 5th, for failing to have the rails securely spiked or fastened to the cross-ties; the 6th, in so constructing the track, that the rails spread when the train ran onto them; 7th, in having worn or defective rails on the track; and the 8th, the negligent management of the train by defendant's employes. The defendant pleaded the general issue to each of these counts. On trial, the jury found a verdict for plaintiff and assessed the damages at $1,800, and judgment was rendered accordingly.

2. The 1st, 3d, 4th, 12th, 13th and 15th assignment of error, question the correctness of the rulings of the court in allowing witnesses to state, that at the embankment where the wreck in which plaintiff is alleged to have been injured occurred, water was allowed to stand in the ditch alongside of the road—which ditch was filled up and would not discharge water—and in the borrow-pits from which the earth was taken in the construction of the embankment on which the road was built. This is done on the alleged ground, that the complaint did not allege any negligence in allowing water to accumulate and stand by the side of the road-bed, and that evidence of these facts was, therefore, outside the issues on which the case was tried. The 2d count, however, charged negligence in failing to have the road-bed in proper condition at or near the place where the car on which plaintiff was riding was derailed; the 3d for failing to have the track in proper condition, and the 6th, that the track was so constructed, that when the train ran upon the same, the rails spread, thereby causing the derailment of the cars. The evidence for the plaintiff tended to show, that the cross-ties of the road on the embankment where the wreck occurred, were decayed and defective, so much so that the spikes which held the rails and track-braces down to the ties, would become loose and work out; that there was at that point, as some witnesses expressed it, a pretty sharp curve in the road, and the embankment was built of a black, crawfish clay, which seeped water; that the ties, from frequent passage of trains, would spring up and down and the water would work out at the ends of the ties on each side, and they were not firmly set in the ground. If this water standing by and

against the road embankment tended to seep and percolate into the embankment thereby rendering it wet, causing the ties to decay, and the road-bed unsteady, and its rails and their fastenings insecure, as the evidence tended to show, such evidence was clearly competent as being within the issues. Skill and care, such as a railroad company should exercise in carrying passengers, are not confined to mere competency and watchfulness of the employes in charge of the train, but include the track and road-bed, for the proper quality and condition of which the company is responsible.—*L. & N. R. R. Co. v. Jones,* 83 Ala. 376; *Birmingham Un. Railway Co. v. Alexander,* 93 Ala. 133; *Mayor and Aldermen v. Starr,* 112 Ala. 98.

3. The witness McDougall's evidence (the basis of the 7th, 8th and 9th assignments of error) tended to show the evil effects of this water standing against the road embankment. He was asked by plaintiff: "What effect would the passing of trains over that curve have when you were working there, and noticed it?" and he answered: "It kept the road-bed out of line, and it was a hard place to keep up on the line." This question was objected to by defendant as calling for irrelevant, immaterial and incompetent evidence, and the objection overruled. The basis of the objection as urged in argument is, that the witness was testifying to conditions he observed, some three years before the time he was working on the road. If it were true, that the witness was testifying to things he observed so long before, and was merely giving his opinion as to what might have happened thereafter, from conditions then existing, the objection to his answer, without more, might have been good; but, the evidence tended to show, that the same conditions existed as to the matters to which he was deposing when the accident occurred, as at the remoter period. Besides, the witness testified, that he lived within a quarter of a mile of the scene of the accident, and had lived there for four years past; and that since the time spoken of—three years ago—he had been for a period of time in the employ of the railroad. He also stated other facts tending to show that he was familiar

with the road-bed and its surroundings; had walked over it twice within three weeks before the accident, and had taken special notice of it. It is again urged as an objection to his answer, that he was not an expert, and could not give an opinion as to these matters. The answer to this objection as to giving his opinion as an expert is, that he was testifying to things he had seen and observed. He was asked only, to tell the effect the passing of trains had when he was working there. The language of the question did not refer to the future of the time he first observed the effect of conditions he then saw, but to the effect those conditions then had. The word "would" as employed in the question, referred to the then present time. This effect was a fact he might testify to, if he knew it, without any expert knowledge on the subject. For the same reasons the 8th and 9th assignments are without merit.

4. The 10th assignment questions the correctness of the rulings in allowing the witness, McDougall, to answer the question: "How many braces ought to be put on a rail in a curve like this?" because he was not shown to be an expert. It is true he stated he was not an expert, but he also swore he had worked on a railroad for three years, off and on, doing section work, keeping up the track on the road-bed; that he had worked on this road as a section hand three years ago; that he had acted as section foreman for fifteen days at one time on the A. G. S. Railroad, and was trusted to put braces where he thought they were needed. The court on such evidence ruled that he had shown himself competent to answer the question. Whether he was an expert or not, and competent to answer the question was the province of the court to determine, and in this there was no error.—*Gulf City Ins. Co. v. Stephens,* 51 Ala. 121.

5. Several physicians made a physical examination of the plaintiff, at the time the trial was in progress, Dr. Heflin among the number, with the view of having them give their opinions as to the character of the injury plaintiff had received, if he had received any at all, and its effects on him. The plaintiff on his own examination had described the injuries he is alleged to have received,

and testified that he was suffering from these injuries at the trial. Several of the physicians testified, that they could discover no objective evidences of injury such as would cause pain or trouble to the plaintiff; that they pressed different parts of the body, without complaint of tenderness or hurt, but that on the hip or lower part of his back he said there were tender spots, and when pressed on these he flinched. The evidence of several of these witnesses questioned seriously whether the plaintiff suffered any serious injury in his alleged fall. Dr. Heflin testified, the plaintiff said, that it hurt him in the hip joint when Dr. Brown would touch him hard on the foot, and when he, Heflin, had him by the foot rotating the leg around, he said it hurt him at the hip joint; that a man could be suffering from pain, or from any trouble, right where he said it hurt him, without giving any external evidences of it; that where a patient says he has pain, that is called a subjective symptom, and doctors act upon such symptoms, in diagnosing a case. The plaintiff's counsel asked the doctor the following question: "What injuries could be inflicted on him by such a fall (being thrown around in a car and rolling from one side to the other, and having the car to turn over) as that wouldn't give out any external evidences—the accident occurring on the 3d of August last—that would not give external evidences in that time? I am asking your opinion as an expert. As a medical man, what would you say might exist?" The defendant objected on the ground that it was improper to ask "what might have existed." The doctor made answer, showing in his opinion, how such injuries might exist without giving out external evidences of them. The objection made was not pertinent to the question asked. It was not inquired, "what might have existed," as objected, but what injuries could have been inflicted by such a fall without showing external evidences of their existence. The fact inquired about, related to the present existence of injury, and not to what might have existed. The evidence was clearly competent. The case of *Strohm v. R. R. Co.*, 96 N. Y. 305, cited by defendant's counsel was where it was very properly held, that consequences which are contingent, specu-

lative, or merely possible, are not proper to be considered in estimating the damages to plaintiff. No such consequences were called for in the question propounded.

6. Only three of the several charges on the 1st, 6th and 8th counts of the complaint, requested by defendant and refused, are insisted on in argument—the charges being as to each count, that if the jury believed the evidence they must find a verdict for the defendant on them, respectively. These charges are faulty and subject to the criticism, that they were liable to convey the idea that a separate verdict as to each of these counts should be returned by the jury if they believed the facts hypothesized.—*M. & O. R. R. Co. v. George*, 94 Ala. 201. Moreover, the jury might have been precluded from finding for the plaintiff in any event, if these charges had been given, notwithstanding under the evidence they might properly have found for him under other counts.

We are unable to determine that the court erred in refusing to grant a new trial.

Affirmed.