(134 So. 480)

## MORGAN–HILL PAVING CO. v. THOMAS.

6 Div. 500.

Supreme Court of Alabama.

March 26, 1931.

Rehearing Denied May 21, 1931.

B. F. Smith, of Birmingham, for appellant.

Smyer, Smyer & Bainbridge, of Birmingham, and L. B. Rainey, of Gadsden, for appellee.

THOMAS, J.

The verdict for· defendant was finally on count 4. The issue was joined on a plea in short by consent, which included special defense, that there was no duty resting upon defendant to maintain, signal, etc., at the point in question, and that of contributory negligence of plaintiff.

The complaint contained, among other things, the material averments of fact, viz.:

"* * * The defendant was engaged in the construction, paving or building of .that certain public road in the County of Chilton, Alabama, commonly known as the Birmingham-Montgomery Highway, and * * * said automobile ran into, upon or against a large hole or excavation in and upon the surface of said public highway, at a point, to-wit, three miles north of Clanton, Chilton County, Alabama, which said hole or excavation defendant had allowed to be and remain in or upon said public road and highway. * * * said automobile in which the plaintiff was riding ran into, upon or against said hole or excavation and, as a proximate consequence thereof, said automobile was wrecked," etc.

"The defendant negligently caused or allowed said hole or excavation to be in and upon the said highway in the night time, without leaving and placing thereon and about the same lights or means of warning to persons driving and operating automobiles in the night time along, upon or over said public road or highway of the presence thereon and therein of said hole or excavation, wherefore the plaintiff sues."

█ A general affirmative charge requested by defendant for affirmative finding "for the defendant" as to certain counts is for such reason bad in form, and the trial court will not be put in error in refusing such charge; its "tendency is to mislead or confuse and require explanation" where there are two or more counts presenting different issues of fact. This does not apply to defendant's refused charge No. 12. Alabama Iron Co. v. Smith, 155 Ala. 287, 46 So. 475; Western Steel Car & Foundry Co. v. Cunningham, 158 Ala. 369, 48 So. 109; Goldstein v. Leake, 138 Ala. 573, 36 So. 458; Dorsey v. State, 134 Ala. 553, 33 So. 350; Louisville & Nashville Railroad Co. v. Sandlin, 125 Ala. 585, 28 So. 40; Mobile & Ohio R. R. Co. v. George, 94 Ala. 199, 10 So. 145; Wear v. Wear, 200 Ala. 345, 76 So. 111; Brotherhood of Locomotive F. & E. v. Milner, 193 Ala. 68, 69 So. 10; Polytinsky v. Johnston, 211 Ala. 99, 99 So. 839; Benton v. Benton, 214 Ala. 321, 107 So. 827; Roach v. Wright, 195 Ala. 333, 70 So. 271.

█ Assignments of error on charges 12 and 7 are argued jointly and in bulk, and both assignments of error have the same fate, if there can be no reversal as to either charge.. City of Montgomery v. Moon, 208 Ala. 472, 94 So. 337; Alabama Co. v. Norwood, 211 Ala. 385, 100 So. 479; Bush v. Bumgardner, 212 Ala. 456, 102 So. 629; Malone v. Reynolds, 213 Ala. 681, 105 So. 891; Southern Railway Co. v. Cunningham, 152 Ala. 147, 44 So. 658.

█ The case went to the jury on' count 4 only; the other counts being withdrawn by

plaintiff. Therefore there was no defect of form or confusion as to the issues of fact (as argued by counsel) in refused charges 7 and 12; hence these requested charges by defendant will be considered.

■ Under count 4 the gravamen was the negligent failure to maintain the roadway without means of warnings at the point in question—negligently "caused or allowed said hole or excavation to be in and upon the said highway in the night time" without "means of warning." The rule of evidence that prevails here is that, if there is slight evidence or reasonable inference that may be drawn therefrom, general affirmative instructions should not be given. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135; Liverpool & London & Globe Ins. Co. v. McCree, 213 Ala. 534, 105 So. 901; American Railway Express Co. v. Henderson, 214 Ala. 268, 107 So. 746; McGahey v. Albritton, 214 Ala. 279, 107 So. 751.

■ The question recurs when the evidence is carefully considered, Was a jury question presented by the controverted facts that showed a duty on the part of the defendant to maintain and keep in safe condition for travel by the public that part of the public highway where the accident occurred and at the time the same occurred?

It was established in the cases of Morgan Hill Paving Co. v. Fonville, 218 Ala. 566, 119 So. 610; Id. (Ala. Sup.) 130 So. 807,[1] and Wade v. Gray, 104 Miss. 151, 61 So. 168, 43 L. R. A. (N. S.) 1046, that a contractor engaged in the construction, maintenance, or repair of a public highway within the time and under the terms of his contract with the superior authority (here the state), and his negligence proximately causes injury to a traveler on such thoroughfare, he is liable in damages therefor; this is to say, a contract between the state and a contractor, requiring the latter to place and maintain necessary barricades, the required and sufficient warnings, signs, danger signals, and other reasonable precautions to protect the work and the traveling public, is the recognition or assertion of nonliability of the state for negligence, and that of recognition and assumption therefor on such contractor, for legal responsibility to travelers upon the highway in question, at the time, place, and under the circumstances, and within contract obligations. Such was the effect of the cases of Morgan-Hill Paving Co. v. Fonville and Wade v. Gray, supra.

The contract is in evidence, and its ambiguous provisions as to the work of paving being done at the time and place are interpreted by the parties. It places responsibility in case of damages "arising out of or on account of work done under this contract * * * upon the contractor." Its scope was for (a) grad-

ing and bringing the surface to the lines shown on the approved plans "in accordance with the plans and specifications"; and (b) provides for specific requirements to put the road "in perfect condition for use," in "strict accordance with the plans and specifications," and to "leave the roadway and adjacent property in neat condition and free from rubbish," etc.; requires that the contractor "shall not deviate from the plans and specifications" without authority; provides for the observance of laws that obtain, and special precautions for "public convenience and safety," such as detours, barricades, warning signals, etc.; sets out the "authority and duties of inspectors," and provides that "the inspector will exercise such additional authority only, as may from time to time be delegated to him by the engineer"; provides for a final estimate and payment after thirty days and upon complete performance. The specific provisions for construction to be done were of "Project No. 100–B" from a point near Lomax to the Autauga county line, in conformity "with the provisions of the contract," notice of the contractors, and proposal, "and the plans and specifications prepared or approved by the State Highway Engineer (or the Assistant State Highway Engineer), the originals of which are on file in the office of the State Highway Engineer," and such plans and specifications are made a part thereof as if set out; that "the State agrees and promises to pay to the contractor for said work, when completed in accordance with the provisions of this contract, the price as set forth in the said proposal, * * * payments to be made as provided in said specifications upon presentation of the proper certificates of the State Highway Commission or its representatives and upon the terms set forth in the said specifications and pursuant to the terms of this contract." It was further provided as follows: "It is understood by both parties to this contract, that the pavement shall not be laid on any embankments exceeding five feet in height, which have not been constructed six months or more prior to the placing of such pavement, unless permission is given by the Highway Commission itself or through the engineer in charge. In the event it shall become necessary under these clauses to skip parts of the roadway where banks are over five feet in height, and return later to such skipped section and lay pavement, there shall be no claim made against the State or approved by the State for any cost accruing by reason of such skipping of embankment sections and returning thereto."

It was further indicated that the contract contained provisions as follows:

"The first is Section 'C' on page 7 of the contract: (Reading)

" 'To start the improvement at the part of the road designated by the engineer, and to conduct and complete the work in accord-

[1] 222 Ala. 120.

ance with the plans and specifications as interpreted by the engineer. The unit or lump sum prices, or both, mentioned in the proposal shall cover the cost of all materials and labor.'

"Section 4, on page 7, under the heading of Alterations:

" 'The engineer shall possess the right to make reasonable changes in the plans or character of the work, when in his judgment these may be desirable, but in case such changes should serve to increase or decrease the cost of the work to the contractor, a corresponding increase or decrease, to be agreed upon between the engineer and the contractor, will be made in the amount paid the contractor. In the event the engineer and the contractor cannot agree upon the compensation to be paid for such changes, the engineer may at his option exclude the work that has been changed from the contract and may have it done by other parties; and his action by so doing shall not be construed as in any manner causing a damage to the contractor. All orders regarding changes in the plans or specifications must be in writing and signed by the engineer.'

"Section 5, on page 7, under the heading of Additional Work:

" 'The engineer shall possess the right to increase the amount of work to be done, within the limits of the plans, without other formality than a written order. Such added work will be paid for at the contract unit prices, where these apply, except where there has been an increase or decree shall accrue to the party in whose favor it may be.'

"Section 8, on page 8, under the head of Limitation of Operations:

" 'The contractor shall so limit his operations as not to have any unduly large section of the road under construction at the same time, and shall keep all of his activities segregated within as small compass as practicable.'

"Section 30, on page 11, under the head of Suspension of Work:

" 'The engineer shall have the authority to suspend the work on account of (a) Default of the contractor, (b) unfavorable weather conditions, and (c) Any other condition which, in the judgment of the engineer, make it impracticable to secure first-class results.' "

The witness Edge, for plaintiff, testified in part as follows:

"The Morgan-Hill Paving Company didn't have anything to do with it except to build the paving and re-shape the shoulders afterwards. The Morgan-Hill Paving Company did not grade the road; they didn't have anything to do with that. They merely paved it, and that is all. Some other contractor graded it. We had to lay this paving as instruct-

ed—that is if they had skipped places, we had to skip (it) them. I guess there were three or four places skipped between Lomax and Clanton. The Morgan-Hill Paving Company never did pave that skipped place there, and they were never required to pave it by the State. * * * That portion of the road there was opened to travel by the public about the middle of July, I think. I would not be positive about the date; the middle of July, 1925. In connection with the section which you just read, set out above, which was in force and effect at that time, we left that skipped place by order of the State Highway Engineer for the upkeep of that skipped place after the road was opened, and will say that when the skipped places got worn out or in bad shape, the engineer would order us to put in gravel and clay, or whatever was most convenient to put in, and specified again that he wanted to be there, and the State had already agreed to the price for the hauling of that gravel and putting it in there, and then in addition to that they paid for the labor. We did not go back there and work on these stretches at any time other than when we were ordered back by the State Highway Engineer. We were paid specifically for that work after it was done. In other words, we did not pave those places that didn't have anything to do with the grading. We never did pave those places. We finished our contract with the State without those places being paved by us. We were paid just for the work we did. We did not pave those skipped places, but since then they were paved by the State from time to time with its own force, and that work was not done in connection with the contract. It was two years after we finished before they did that paving. That work was done in detail and in compliance with the State Highway Engineer's instructions. * * *

"The reason that little skipped place wasn't paved was because the engineer ordered it left out, but I do not know why he ordered it left out; I couldn't tell you exactly why he ordered it left out. The Morgan-Hill Paving Company did chert those skipped places, and that was completed on the 15th, I believe, 1926. You read to me from page 12 of the contract the following clause: 'Maintenance. The contractor will be required to maintain the road in first class condition for thirty days after it is completed, and fifteen (15) per cent. of the final estimate will be retained by the State to enforce this requirement,' and you ask me what the Morgan-Hill Paving Company did during that thirty day period after the road was completed in order to keep it in first class condition, and will say that we didn't have anything to do with this little skipped place at all. On the part that was paved, there wasn't anything necessary to be done, and consequently there wasn't anything done on that. The concrete part didn't have any repairs made to it; I know that. Other

repairs made on that road was maintenance of the shoulders, and they did that. Maintaining the shoulders was about all there was to it. During that 30-day maintenance period, all the concreted road, once it is done, you don't have any maintenance, except the shoulders. During the time this road was opened for traffic, for 30 days thereafter, the duty of the Morgan-Hill Paving Company was to keep the part of the road they paved in first class condition. They paid us for what we did, and that 15%, they paid that in full. We maintained those places just as they ordered us to do, and the State paid us for it. * * *

"We did not grade this road, and we had nothing to do with grading the road, or with those skipped places. The contract you show me is the contract we had to pave that road with concrete. It shows by the provision you read to the jury that anything the engineer told us not to pave, we did not pave, and we were not called on to maintain that part of the road that we did not build, and that he instructed us not to pave; not at the unit price for it; he paid us extra for that. We had a unit price for the paving, which covered any maintenance of that, and so he paid us extra for anything else. We had a contract to pave 18 and a fraction miles of that road, and that was the total distance in there. The general provision and rules were such that if the engineer deemed it advisable to skip a place, we, of course, had to skip that place, and we did not get paid for it, and we understood that when we took the contract. * * *

"When the engineer deemed it advisable to have any of those places re-surfaced, if he asked us to do that, he paid us extra for that. Our contract did not call for any grading or surfacing of the chert part of the road; just surfacing it is all. * * *

"We did do some cherting. When we came to a place that wasn't to be paved, we would pave down to the place where the engineer told us to, and then we would put chert on that place and make it level with the concrete, on orders of the engineer. It is the duty under those contracts to do anything the engineer tells us to do, and when we did that we got extra pay for it; we got a specified price for that."

The witness Villadsen, for defendant, among other things, testified that he was the resident engineer for the state highway department supervising the work; that defendant "did not do the grading"; that its contract "was to pave it"; that he saw the point in the road the next day after the accident in question; that "the surface and smoothness between the two stretches of pavement across that fill * * * was just a graded section left out that wasn't paved, * * * was

just a little bit lower, and the dirt was pulled up to make a grade on both ends to the pavement, so there wouldn't be a jump off of two or three inches. There were no holes two or three feet along the traveled part of that road the day before * * * nor after the accident"; that it was his duty "to keep up with that particular section of the road"; that he was familiar with the provisions of the instant contract and instructed defendant, "under my authority as resident engineer of the State Highway Department, not tó pave that particular fill. I never did instruct them to pave it, and they never did pave it. You ask me if their contract with the State, after I instructed them not to pave it, did not require them to pave it. We required them to skip that and come back when they saw fit, but in this case we didn't see fit to call them back to do that work before the contract was closed. * * * I requested the Morgan-Hill Paving Company to do surfacing on this stretch of road after they had passed it with the paving, and that surfacing was done under a supplementary contract; in other words, an agreement. There was nothing to cover that type of surfacing in the contract, and we just had an agreed price to put the surfacing material on there, and that was put on at an agreed price."

The witness was then asked the following question: "I will ask you if this was part of the contract between the State Highway Department and the defendant with reference to this entire stretch of road, and whether or not you, as agent or representative of the State Highway Department, charged with the duty to carry out this contract for the State, under the head of 'Alterations', (reading) 'The engineer shall possess the right to make reasonable changes in the plans or character of the work, when in his judgment these may be desirable, but in case such changes should serve to increase or decrease the cost of the work to the contractor, a corresponding increase or decrease, to be agreed upon between the engineer and contractor, will be made in the amount paid the contractor. In the event the engineer and the contractor cannot agree upon the compensation to be paid for such changes, the engineer may at his option exclude the work that has been changed from the contract and have it done by other parties' "? To which he answered: "Yes, sir."

Testifying further, witness said:

"I did order them to skip places from time to time when I deemed that any additional work was to be done, and they didn't come back and do that work only when I requested them to do so, and they were paid extra for the material and the work done on those skipped places, and if they didn't do any work, they didn't get any pay for it. This road where this accident occurred had been

open to traffic some two or three months before this accident occurred; I don't recall just exactly. You asked me who had this road opened for traffic, and will say that whenever the concrete had cured sufficiently to turn traffic on it, we just opened it up, and it was within my authority as resident engineer to order the road opened, and some two or three months before this accident happened I order this particular stretch of road opened to traffic. * * *

"When the Morgan-Hill Paving Company came to a skipped place, they would chert it whenever we told them to. At the place of this accident it had some gravel on it, put there by the Morgan-Hill Paving Company. They had been working on that road for several months prior to this accident, and they continued to work on this particular project for several months after this accident, and they maintained that entire project from time to time, and they maintained it for a period of 30 days after the road was completed in 1926. * * *

"They did not maintain those skipped places unless I instructed them to put something on them. They maintained that part their contract covered. They maintained and complied with all the terms of the contract, but these skipped places, where they didn't do anything unless I instructed them to do so, they were paid extra for that work. When I told the jury they maintained that road, I meant they maintained the part they built, and they did not maintain these skips except when ordered to do so. * * *

"Those skipped places were all the same road, and people that traveled over the paved part of the road would travel over those skipped places. It was our duty to have lights, barricades and warnings put out on that road by the contractor, and the Morgan-Hill Paving Company was the contractor on this road. * * *

"They did keep lights and warnings there while we had it barricaded. There was no duty on them to put lights on the road promiscuously where the road was not barricaded. On work that had been completed and opened up by me as engineer for the State Highway Department, there was no duty on them under their contract to put lights along the road promiscuously, but they did put lights and signs where there were barricades and detours. There was no duty on them to put lights and notices along those skipped places where the road had been opened."

When the evidence and reasonable inferences therefrom are considered, a very different case is now presented than in the Fonville Case, supra. The duty, on defendant's part, to maintain and keep in safe condition for travel by the public that part of the high-

way at the time and place of the accident is not shown by plaintiff nor by defendant's admissions in answers to interrogatories under the statute, nor by its evidence. That duty of maintenance was upon the superior authority acting for the state or its highway commission. Sections 1303, 1307, 1319 Code 1923, as amended by Gen. Acts 1927, pp. 349, 351, 354, §§ 6, 10, and 19; Union Indemnity Co. v. State, for Use of McQueen Smith Farming Co., 217 Ala. 35, 114 So. 415.

The contract was for the work of paving only, and the evidence was without dispute that the roadbed was new construction by the state, through other contractors than defendant, who graded, leveled, and made ready for the pavement prior to the contract and work by the defendant. The uniform and continuous procedure by defendant of its paving work was directed and intercepted here and there by the state's engineer in charge, by virtue of the statute and provisions contained in the contract. Therefore the contract was subject to material conditions controlling and directing the engineer in the discharge of his duties, and as to the conduct of this paving, and, in accordance therewith, he exercised and discharged his duty and authority. The parties had left this to the good and honest judgment of the resident engineer, and to such limited extent final determination as to what should be done on the work was for him and subject to his direction.

The terms of the contract, or their execution, were subject to explanation and establishment, in respects indicated, as to what was finally determined, directed, and done in completion of the work as it proceeded in sections and units for which final estimates and payments were made, and as opened to the public.

There is no evidence that reasonably tends to support the allegation that the accident occurred on the portion of the highway that defendant "paved" under the contract in evidence, nor does the evidence show a duty on defendant's part to "maintain" that section of the highway in a safe condition at the time of the accident. The uncontradicted and reasonable tendencies of the evidence are to the contrary. The accident was at the time and place excluded from and not within its contract or order "to pave," as construed by the parties and as directed by the resident engineer.

The affirmative charge requested by the defendant should have been given. It results that the judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.