169 So. 868

### POOLE v. FLETCHER.

### 8 Div. 724.

Supreme Court of Alabama.

Oct. 8, 1936.

Griffin & Ford, of Huntsville, for appellant.

Taylor, Richardson & Sparkman and Cooper & Cooper, all of Huntsville, for appellee.

THOMAS, Justice.

The suit was for personal injuries against Bentley Brothers, a partnership doing business as American Transfer Company, and the several individuals named.

After all the evidence was in, the defendants moved to exclude certain evidence, and the court sustained the motion. The bill of exceptions recites as to this and the ruling on the given affirmative charge, as follows:

"We move to exclude all the evidence with reference to Newman Russell.

"The Court sustained the motion and the plaintiff duly excepted thereto.

"The Court: The evidence as to Newman Russell when he was standing by the truck and what he said is excluded from you, gentlemen.

"The plaintiff then amended the complaint by striking all the parties except S. S. Fletcher.

"The defendant introduced no testimony and asked for the general affirmative charge in writing, which was given by the Court before the jury retired and was as follows: 'I charge you if you believe the evidence you will find for the defendant, and the form of your verdict if you follow that charge will be, We, the jury, find for the defendant.'"

These rulings are assigned as error.

The trial was had upon amended counts 4, A, B, C, D, and E, and defendants' respective pleas in short by consent.

Appellant states that the effect of counts 4, D, and E is founded upon the agreement to transport appellant safely; to furnish a safe conveyance for appellant, and the failure thereof. The other amended counts declared for the negligent failure in the exercise of reasonable care in the transportation of cotton pickers to defendant's farm, among whom was plaintiff. This was the statement of the burden of proof that plaintiff assumed as to the establishment of such agreement, and the failure in that behalf, and of the negligent failure to exercise reasonable care in the transportation of laborers to defendant's farm.

Was there reversible error in excluding the evidence that Newman Russell was standing by the truck when the laborers were loading, and what he said as to such cotton pickers? The witness J. W. Poole, father of the plaintiff, testified as to this as follows:

"I don't know the time I got on the trailer here in front of the First National Bank, in the morning of the 9th, it was somewhere around 6:30 or seven o'clock. I don't know who drove the trailer out there. Newman Russell was there. I did not see Mr. S. S. Fletcher. Mr. D. Maddox was there.

"Q. Was any one there giving directions about getting on the truck? A. Yes sir.

"Q. Who was that, and what was said?

"A. Newman Russell told us that all that wanted to go to the Fletcher farm to pick cotton to get on the truck. * * *

"I didn't hear him say anything to the driver about driving on. Then we all loaded up and the truck moved off. We started to the defendant Fletcher's farm but we didn't get there. We were picking cotton there the day before at the same place. Mr. Fletcher was out on the side of the road close by the field the day before; he was not in the field. * * *

"Mr. Melson paid us off. I don't know him but I have found out since that he was the man that paid off. Mr. Fletcher figured the weights that each one had picked, and this man sit by the side of Newman Russell on the back seat, and had some money and told him how much to pay us. Mr. Fletcher told him.

"Q. Did Mr. Fletcher say anything about working the next day? * * *

"Mr. Fletcher said for us all to come back the next day and he would put us in better cotton. That's all I remember that he said. He told us to come back the next morning and bring as many as we could and he would put us in better cotton. Minnie Poole was not present; she did not pick that day. Mr. Fletcher told us to

come back and bring all the help we could. I did not communicate that to my daughter.

"Q. How did your daughter happen to be there going out on the truck the next morning? A. The next morning she told me, 'I believe I will go and pick cotton today with you papa', and I said 'All right'. Of course we had the invitation to get on the truck and we both got on.

"Court: I sustain the motion to exclude the statement as to what Mr. Fletcher said. It doesn't show any agency on his part to employ Minnie Poole.

"The plaintiff duly excepted to the action of the Court in sustaining the motion made by Mr. Taylor."

The plaintiff introduced in evidence interrogatories propounded to the defendant Melson, the answers to which are in part as follows: "I did not rent or hire that certain motor vehicle and trailer which was being used on or about October 9, 1934, for the purpose of transporting cotton-pickers and which said trailer turned over and injured several of the said cotton-pickers. On or about October 9, 1934, I was not in the employment of S. S. Fletcher, but I was assisting him in the operation of a plantation or plantations. On or about October 9, 1934, I had no specific duty; I assisted in the operation only when called upon. It was not a part of my duty in the employment of S. S. Fletcher to transport cotton-pickers from Huntsville to the cotton fields in which S. S. Fletcher had an interest for the purpose of picking cotton. I do not know whether or not the said motor vehicle and trailer which turned over on or about October 9, 1934, was en route to the cotton fields of S. S. Fletcher. I do not know what the contract of employment was between the cotton-pickers who were turned over in a trailer on or about October 9, 1934, and their employer. As a part of the consideration of the employment of the said cotton-pickers, neither I, nor S. S. Fletcher, nor an agent acting for either of us, either expressly or impliedly agreed to furnish transportation to the said cotton-pickers. Transportation for the said cotton-pickers was not to be furnished in addition to paying them for their services. Newman Russell was not in the employment of S. S. Fletcher on October 9, 1934. I understood that Newman Russell was to weigh cotton for tenants on a plantation operated by S. S. Fletcher.

* * * I do not know that the said cotton-pickers were being transported in the said trailer for the purpose of picking cotton in the fields in which S. S. Fletcher had an interest. I did not instruct the owners of the trailer or their agent, to park it on the square in Huntsville, Alabama, in the morning of the day that the said trailer turned over. I did not instruct them to park it at that particular time. I never instructed the said owners, or their agent, to pick up anybody. I did not send some one with the said motor vehicle and trailer to direct the driver of the said motor vehicle to the cotton fields."

George Bentley, a defendant (and a partner of Bentley Brothers), as a witness said:

"Along about the 8th or 9th of October, 1934, Bentley Brothers owned a trailer attached to a motor vehicle. That is the trailer that turned over in this case. That trailer left our place of business the morning of October 9th, the morning of the accident. Newman Russell and the driver left with it. Mr. Melson brought us the check for the use of the trailer that day. As well as I remember it was Mr. Fletcher's check. I don't know which way the trailer went when it left my place. I told the driver where to drive the trailer to. I gave him no instructions at all about operating that truck or trailer. I had no control, so far as the operation of the truck is concerned, after it left my place. I understood they wanted that truck to haul cotton-pickers; cotton-pickers or freight; to go wherever they wanted it to go. The name of the driver was Walter Jude. He is dead now. Newman Russell was not employed by Bentley Brothers. The driver of the truck was employed by Bentley Brothers. * * *

"We do contract hauling. By that I mean that we agreed to take a load a certain distance for anybody that wants to employ our truck. I believe we had been down to this Fletcher farm four times before this accident happened. Mr. Melson made arrangements for the truck to go there. He made the arrangements with me. The arrangements were that I agreed to make two trips a day down to the Fletcher farm for him. He told me when he made these arrangements that he wanted the truck to make trips to the Fletcher farm to carry cotton-pickers. He said something about the truck hauling cotton back from the farm sometimes, if there was any cotton picked that they wanted

in Huntsville. The driver's name was Walter Jude. * * * Mr. Russell went along with them. I gave no instructions to the first driver. Mr. Russell gave the instructions to Walter Jude; I told him to go where Mr. Russell said go. I didn't know where they were going to pick up the hands. All Newman Russell had to do, so far as I know, was to tell the driver where to go to pick up the hands, and where to carry them. Newman was not operating the truck; just told the driver where to drive. I paid Walter Jude for his work. I did not haul any cotton-pickers for anybody else except Mr. Fletcher last fall."

The witness Maddox testified: "I got on the trailer to go to Mr. Fletcher's farm the morning I was hurt. I got on at the First National Bank. I seen Mr. Fletcher there after I got on. I hollered and told him he had better get his bank book; that he would need it to pay us off. He raised his hand that way (indicating) and smiled. I know Newman Russell when I see him. He was there that morning. He went out with us. He said, 'All get on here and let's go'. We all got on and the truck moved off. Nobody came around there and inspected that truck while it was over there. I wasn't out in the fields the day before."

The witness Putnam testified, among other things, that "That day Mr. Fletcher told us to come back the next day and bring all the help we could and he would put us in better cotton the next day. He was to pay our transportation out there and back and pay us 60 cents per 100 for picking the cotton."

The record recites the following in the course of examination of the witness Mullins:

"Q. What was said about people getting on the truck by Newman Russell? * * *

"Q. What did he say, Mr. Mullins?

"He told us to get on and go pick cotton and the truck moved off. We were going to Mr. Fletcher's farm to pick cotton. We loaded up and the truck moved on. I was on the trailer when it turned over. * * * I was out there picking cotton at the same place the day before. Mr. Fletcher come out at night to pay us off. He was there with Mr. Melson. Mr. Fletcher was the one that paid us off. He told us to get all the help we could and come back the next day and he would put us in good

cotton and furnish us a way to get there. When we left on that morning of the day before we got on at the First National Bank corner and went to Mr. Fletcher's farm. The crowd was standing around when he made that statement to me. Mr. Poole was there. I never talked to either one of the Bentley Brothers about this case.

"Cross-examination:

"I was in the truck when it turned over. I got hurt. I have a suit against Mr. Fletcher too."

The plaintiff, in her own behalf, said: "I was hurt on the 9th of October, 1934. I got on the trailer in front of the First National Bank. I know Mr. Fletcher, the defendant, I have seen him. I did not see him over here that morning. I didn't see any one come there and go around and look over that trailer to see how it was attached to the chassis. * * * I saw my father when he came in the night before. He said Mr. Fletcher said he wanted all the cotton-pickers he could get."

And on cross-examination: "I heard my father testify a few minutes ago. I heard him testify that he didn't tell me what Mr. Fletcher said. He is mistaken about that. He told me the exact words I told you; all that he said, and asked me if I wanted to go. I told him the next morning that I wanted to go out there, and he said he would rather I wouldn't go, and I told him I would go. That night he was talking to mother and I about it. I did not tell him then that I would go; I told him the next morning. That was Monday night and it was the next morning, Tuesday, when we started. I had never picked cotton before; that was my first job."

The rules that obtain as to the giving or refusing of general affirmative instructions requested in writing are well understood and need not be repeated. McMillan v. Aiken et al., 205 Ala. 35, 40, 88 So. 135.

The scintilla of evidence rule prevails, and where there is the slightest evidence tending to prove plaintiff's right of recovery, the affirmative charge should be refused. McGahey v. Albritton, 214 Ala. 279, 107 So. 751; Penticost v. Massey, 201 Ala. 261, 77 So. 675; Morgan-Hill Paving Co. v. Thomas, 223 Ala. 88, 134 So. 480.

There is an insistence that the complaint now charges that the complaint was against all the defendants, and, therefore,

there was a variance entitling the defendant to the general affirmative charge; but our view is that the amendment eliminating all the other defendants singularized the averments, limiting them to the agency of Fletcher as the person committing the alleged damnifying act.

 We are of the opinion that there was reversible error in the exclusion of the evidence in question, and in giving the general affirmative instruction at the request of the defendant.

The judgment of the circuit court is, therefore, reversed, and the cause remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.